**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| ELIZABETH A. WOMBLES, individually )<br>and on behalf of others similarly situated, )<br> )<br>Plaintiff )<br> )<br> )<br> )<br> )<br> )<br>vs. )<br> )<br>BRIDGES OF INDIANA INC., )<br> )<br>Defendant ) | **FLSA COLLECTIVE ACTION**<br>**COMPLAINT UNDER**<br>**29 USC § 216(b)**<br><br>CASE NO.  2:19-cv-25 |

*PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

*I.  INTRODUCTION*

Plaintiff Elizabeth A. Wombles ("Wombles") brings this collective action lawsuit against Defendant Bridges of Indiana Inc. ("Bridges") to address class-wide overtime violations committed by Bridges against its home care provider employees.  Wombles will serve as the representative plaintiff in the FLSA collective action.

Specifically, Bridges is and has been underpaying overtime compensation to its hourly-paid home care providers on a systematic, class-wide basis as a result of an unlawful practice by which Bridges is failing to include all of its employees earned wages in its calculation of employees' regular rates of pay and, in so doing, is failing to include all earned wages in its calculation of its employees' overtime rate of pay.  All hourly-paid home care providers were and are being similarly subjected to Bridges' unlawful compensation scheme.  To explain generally, Wombles and all similarly situated home care providers regularly earn a portion of

1

their wages through their actual hours worked in pay roll categories Bridges simply calls "Bonus." Though the word "Bonus" is used, the "Bonus" is an earned wage paid on a regular basis. The "Bonus" is in no way gratuitous or discretionary. Bridges is paying overtime compensation to home care providers, but it is paying overtime only a rate equal to one and one-half times the home care providers' base rate of pay. It is not including the earned wages it call "Bonus" in the calculation of home care providers' regular rate of pay and it is not including the "Bonus" wages in the calculation and payment of overtime paid to home care providers. This class-wide and systematic failure and refusal to include the earned "Bonus" wages in the calculation of home care providers' regular rate of pay violates the Fair Labor Standards Act ("FLSA") and result in class-wide underpayment of overtime compensation.

Wombles' collective action claims based upon Bridges' failure to include earned wages it calls "Bonus" in the calculation of regular rates of pay and overtime rates of pay will be perfect for collective action treatment and will be easy to prove. All of Bridges' overtime violations will be shown on the face of pay stubs Bridges issues to its employees who work as home care providers.

## II. FACTUAL ALLEGATIONS

1.      Wombles is a resident of the State of Indiana and is domiciled in Seelyville, Vigo County, Indiana. Wombles was hired by Bridges in April 2018 to work for it as a home care provider. She voluntarily resigned in May 2018, but was rehired in September 2018. She worked as a home care provider[1] for a disabled Bridges client at the client's home in Terre

---

[1]On its website, Bridges appears to refer to home care providers as "direct support professionals." For purposes of clarity and comparison of Wombles' wage claim to the claims of other similarly situated plaintiffs, Wombles will use the phrase "home care provider."

Haute, Vigo County, Indiana.  She continued her home care provider employment with Bridges

until she was involuntarily terminated on or about December 27, 2018.  At all times during her

employment with Bridges, Wombles was paid wages on an hourly basis and treated as a non-

exempt employee.

2.      Bridges is an Indiana corporation.  It lists its principal address as 969 Keystone

Way, Suite 200, Carmel, Indiana 46032.  Bridges has offices throughout the State of Indiana,

listing offices on its website in Merrillville, South Bend, Fort Wayne, Muncie, Kokomo,

Indianapolis, Terre Haute, Lafayette, New Albany, Columbus, Evansville, and Vincennes,

Indiana.

3.      Bridges provides services to aged and disabled services.  Wombles and all

similarly situated coworkers, worked for Bridges as home care providers, giving in-home care

services to elderly and/or disabled Bridges clients.

4.      Throughout her employment with Bridges, Wombles was a non-exempt employee

who was compensated by Bridges on an hourly-paid basis.  At the time of her termination,

Wombles' base rate of pay was at least $11.00 per hour (Wombles believes her hourly pay was

being increased to $11.26 per hour at the time of her termination).  During her employment with

Bridges, Wombles worked significant overtime hours (in excess of forty hours in a seven day

work week).  When Bridges paid Wombles overtime compensation, it only compensated her at a

rate which was one and one-half her base rate of pay.  Bridges failed, however, to compensate

Wombles for her overtime work at a rate that was one and one-half times her full, regular rate of

pay and, in doing so, Bridges violated the FLSA.

5.      Wombles regularly earned and was paid a portion of her wages in pay roll

categories Bridges called "Bonus." This "Bonus" category of pay was earned by Wombles based upon her hours of work and the work she actually performed. The "Bonus" was regularly and routinely earned and paid. The "Bonus" wage was in no way gratuitous or discretionary. In all weeks in which Wombles worked overtime hours (hours in excess of forty hours in a seven day work week) and also earned wages in one or more of Bridges "Bonus" categories, Bridges failed and refused to include the "Bonus" wage in its calculation of Wombles' regular rate of pay and, in so doing, violated the FLSA by failing to include Wombles' full regular rate of pay in its calculation of Wombles' overtime rate of pay and in its payment of Wombles' fully earned overtime compensation.

6.     During every pay period in which Wombles worked and was owed overtime compensation, her pay stubs show that Bridges only paid her at an overtime rate equal to one and one-half times her regular rate of pay.

7.     Wombles can provide a specific example. During the two week pay period from November 4, 2018 to November 17, 2018, Wombles worked a total of 127.0 hours and 36.5 of those hours were treated as overtime hours. In fact, Bridges' records show that Wombles worked and should have been paid at an overtime rate for at least 47.0 overtime hours in that two week time period. Bridges also paid Wombles wages totaling $93.17 in two categories Bridges called "Bonus." In total, Bridges paid Wombles gross wages of $1,690.92 for her two week pay period from November 4, 2018 to November 17, 2018.

Wombles pay stub itself shows that Bridges paid Wombles at her $11.00 per hour base rate of pay for 90.5 hours. Bridges paid Wombles at $16.50 per hour - an amount equal only to one and one-half her $11.00 per hour base rate of pay - for 36.5 overtime hours. Bridges did not

4

include the $93.17 earned "Bonus" wages in the regular rate or the overtime rate calculation and did not pay Wombles any overtime compensation based upon this "Bonus" wage.  To properly calculate Wombles' regular rate of pay for the two week pay period by including these earned wages called simply "Bonus," Bridges had to divide the $93.17 "Bonus" wages by the total reported hours of work - 127.0 - for the two week period.  That results in an additional $0.7336 per hour and made her regular rate for the pay period $11.7336 per hour.  In turn, that inclusion of the "Bonus" wages for Wombles 47.0 overtime hours meant that Bridges owed Wombles her overtime compensation at the rate of $17.60 per hour.   For this pay period from November 4, 2018 to November 17, 2018, Wombles should have been paid gross wages of at least $1,800.37 (80.0 hours at $11.00 per hour + 47.0 overtime hours at $17.60 = $93.17 "Bonus" wages).  In just this one pay period, Bridges failure to properly calculate and pay Wombles her earned overtime compensation resulted in an underpayment of $109.45.

Bridges committed this same FLSA overtime violation through failure to properly calculate overtime compensation in virtually every pay period worked by Wombles.

8.     Bridges is similarly underpaying overtime compensation to all of Wombles' similarly situated home care providers by failing to pay overtime hours worked at full overtime rates of pay - one and one-half times the full regular rate of pay.  Bridges is systematically committing this overtime violation by failing to include regularly paid, earned wages it is calling "Bonus" in the regular rate of pay and by also failing to pay overtime hours of work at an overtime rate of pay at all (it is paying home care provider hours in excess of 40.0 in a work week at a base rate of pay).

9.     Bridges has created a policy and practice whereby it significantly underpays

home care provider overtime compensation by failing to properly include "Bonus" wages and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

10.     Based upon its long-standing policy and practice of improperly calculating overtime compensation, Bridges has been systematically underpaying its home care providers significant sums of overtime wages on a weekly.  The aggregate sum of unpaid overtime for all home care providers is very substantial on a weekly and on an annual basis.

11.     Based upon information and belief, particularly when including employee turnover, Wombles estimates that Bridges applied its unlawful method of calculating and paying home care providers for overtime hours of work in a manner that affects hundreds, if not 1,000 or more home care providers.

12.     Bridges has intentionally, knowingly, with reckless disregard and systematically violated its home care providers' rights to earned overtime through Bridges' unlawful overtime calculation and payment policies.

### III.  COLLECTIVE ACTION ALLEGATIONS

13.     Wombles incorporates herein by reference paragraphs 1 - 12 above.

14.     This Complaint is brought as a collective action under the FLSA on behalf of Wombles and other current and former Bridges hourly-paid home care providers who were similarly denied payment of wages and overtime compensation under Bridges' compensation scheme that involved the improper calculation of regular rates of pay needed to properly calculate overtime rates of pay and the underpayment of overtime compensation.

15.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Wombles and all Bridges current and

former hourly-paid home care providers who were damaged by Bridges' compensation system which required and resulted in unpaid or underpaid overtime work.  By virtue of the "collective action," Wombles represents the identical and/or similar interests of former and current hourly-paid home care providers denied full overtime compensation under the same circumstance. Wombles anticipates that other Bridges employees and former employees will opt in to the action.

16.     The number of Bridges current and former employees who will be members of this collective action is so great that joinder of all members is impractical.  Instead, Wombles will pursue discovery to obtain the names of the other current and former Bridges home care providers, to provide notice of the collective action, and to offer the opt-in opportunity.

17.     Particularly with the types of overtime wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

18.     Wombles' claims are typical of the claims of the whole collective group of current and former hourly-paid home care providers harmed by Bridges' illegal overtime calculation and payment practices.

19.     Wombles will act to fairly and adequately protect the interests of the entire collective group of current and former Bridges home care providers.

20.     A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against Bridges.  For example, to prove Bridges' illegal overtime practices, Wombles and other members of this collective group would seek in discovery records about all similarly situated current and former Bridges home care providers who were similarly denied earned overtime compensation.  Individual lawsuits by the members

of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

21.    A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

22.    A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## IV.  JURISDICTION AND VENUE

23.    This Court has jurisdiction over Wombles' FLSA claims under 28 USC § 1331 as those FLSA claims raise a question of federal law.  See 29 USC § 201 et seq.

24.    This Court is the appropriate venue for this cause of action as Wombles worked for Bridges in Terre Haute, Vigo County, Indiana and most of the illegal activity took place in the Southern District of Indiana.  28 USC § 1391.

## V.  STATEMENT OF CLAIMS

### A.  Fair Labor Standards Act Claims

25.     Wombles incorporates herein by reference paragraphs 1 through 25 above.

26.     Bridges is an "enterprise" as that term is defined by the FLSA, and Bridges is covered by the overtime and minimum wage provisions of the FLSA.  Bridges is an "employer," as that term is defined by the FLSA.  Finally, Bridges is a "person" as that term is defined by the FLSA.

27.     Wombles committed overtime violations under the FLSA against Wombles and all similarly situated home care providers, as earned, regularly paid "Bonus" amounts should have been included in employees' regular rates of pay and included in any calculation of overtime compensation due to Wombles and each and every similarly situated class member in each and every week in which both overtime compensation and "Bonus" were owed.

28.     Because it failed to include earned "Bonus" wages in its calculation of overtime compensation, Bridges failed to pay Wombles and each and every similarly situated home cre provider at the full and correct overtime rate of pay, as required by the FLSA, in any and all calendar weeks in which Wombles and every similarly situated home care provider worked in excess of forty (40) hours.

29.     Additionally, Bridges has repeatedly violated the FLSA's overtime provisions by failing to pay Wombles and each similarly situated home care provider at overtime rates of pay for every overtime hour worked.

30.     Bridges' failure to comply with the FLSA's provisions regarding overtime compensation has been willful and without justification, and subjects Bridges to a three year statute of limitations.

31.     Wombles and the Plaintiff Class seek all available damages, including unpaid

wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Bridges' violations of their rights under the Fair Labor Standards Act.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Wombles respectfully requests that the Court enter judgment against Bridges, and issue all available relief to her and to all eligible members of the Plaintiff Class, including, but not limited to, the following:

1.      All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2.      All unpaid and underpaid wages;

3.      All reasonable attorney's fees and expenses;

4.      Costs;

5.      Prejudgment interest, if available; and

6.      Any and all other relief just and proper in the premises.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By /s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net

11